# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2994 | **DATE** | 7/13/2004 |
| **CASE TITLE** | Williams vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 7/29/2004 at 9:45 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Plaintiff's motion to strike [44-1] is denied. Defendant's motion to strike [50-1] is granted in part and denied in part. Defendant's motion for summary judgment [27-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

Document Number: 52

Date docketed: JUL 14 2004
Date mailed notice: JUL 14 2004

✓ Docketing to mail notices.
  Mail AO 450 form.

courtroom deputy's initials: RO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KAREN WILLIAMS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 03 C 2994 |
| CITY OF CHICAGO, | ) | Judge Ruben Castillo |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit raises important issues concerning the ill-advised viewing of internet pornography within the workplace. Unfortunately, the workplace is the Chicago Police Department. As a result of this pornography and other conduct, Plaintiff Karen Williams sued Defendant City of Chicago (the "City") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1–e-17, for sexual harassment and retaliation. The City now requests that this Court grant summary judgment in its favor because no rational trier of fact could find that it harassed or retaliated against Williams. Both parties have also filed motions to strike various submissions. For the reasons provided below, Williams' motion to strike is denied, (R. 44-1), the City's motion to strike is partially denied and partially granted, (R. 50-1), and the City's motion for summary judgment is partially denied and partially granted, (R. 27-1).

### RELEVANT FACTS[1]

The Chicago Police Department hired Williams as a police officer in December 1986. She was promoted, two years later, to the position of Gang Crime Specialist and started working

---

[1] Because the City, in its motion to strike, vigorously challenged the admissibility of nearly every fact in Williams' fact statement, we have endeavored to explain specifically the admissibility of each fact in this section. Because we accepted some of the City's arguments and rejected others, the City's motion to strike is partially granted and partially denied. (R. 50-1.)

in Homan Square on Chicago's west side. She was subsequently transferred to Area 2 on Chicago's south side. Williams claims that the City, through its agents, sexually harassed her and then retaliated against her because she complained about the sexual harassment.

**A. Homan Square**

Williams worked the second watch, which is the mid-day shift, at Homan Square. She repeatedly saw Police Officer Richard Heinosch view internet pornography at work.[2] (R. 39, Pl.'s Facts ¶¶ 13-14, 16-17, 20.) Officer Heinosch also printed photographs of female arrestees using Williams' computer log-in and, while showing her one of these photographs, asked her if she thought the woman in the photograph "took it up the ass."[3] (*Id.* ¶¶ 11-15.) Williams complained about Officer Heinosch's conduct to Sergeant Steven Caluris in September 1999.[4]

---

[2] The City denies that Williams saw any "sexually graphic pictures and websites" other than the two images she described during her deposition. (R. 49, Def.'s Resp. to Pl.'s Facts ¶ 13.) The City claims that all of Williams' statements concerning additional images should be struck because they contradict her earlier testimony. *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996). Williams' testimony that she saw additional images is not inconsistent with her deposition testimony because she stated during her deposition that internet pornography was "ongoing" and that she saw Heinosch view pornography approximately thirty times. (R. 30, Def.'s App., Ex. I, Williams Dep. at 16-17.) The fact that she can recall the content of additional images subsequent to her deposition does not make this testimony inconsistent. Therefore, her affidavit is not inconsistent with her deposition testimony. Accordingly, the number of times Williams saw Heinosch view internet pornography as well as what she saw him view are disputed facts. Because we evaluate all admissible evidence in the light most favorable to the non-moving party, for the purposes of this summary judgment motion, we assume that disputed facts are true. *See Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 (7th Cir. 2004).

[3] The City does not deny that Heinosch did this, so for purposes of this summary judgment motion we find this fact undisputed. (R. 49, Def.'s Resp. to Pl.'s Facts ¶ 15.)

[4] The City claims this allegation is inadmissible because Williams cannot lay the proper foundation for this conversation. (R. 49, Def.'s Resp. to Pl.'s Facts ¶ 24.) Williams has provided enough detail about this conversation—approximate time, general content, and Caluris' response—to establish a proper foundation for her testimony. Therefore, this conversation is disputed because Caluris denies that it ever took place. *Id.*

2

(*Id.* ¶ 18.) She also gave him a memo in November 1999 complaining about, among other things, Heinosch's conduct.[5] (*Id.* ¶ 28.) In this memo, she stated that she "can no longer continue to be subjected to what is clearly hostile and discriminatory . . . ." (*Id.*, Ex. 2, Williams Memo.)

As a result of these complaints, Williams claims that Sergeant Caluris retaliated against her in the following ways. First, he threatened to initiate several Summary Punishment Action Requests, known as SPARs, against her.[6] (*Id.* ¶¶ 22, 25, 27.) Second, he told her she was not entitled to a lunch break.[7] (*Id.* ¶ 23.) Third, he threatened to place her on the third watch, which is the night shift.[8] (*Id.* ¶ 24.) Finally, he lowered her efficiency rating when he reviewed her work performance. (R. 28, Def.'s Facts ¶ 43.) Williams also claims that Lieutenant John Risley retaliated against her by transferring her to Team 8 of Unit 156.[9] (R. 39, Pl.'s Facts ¶ 30.)

---

[5] This fact is disputed because the City claims that Williams never gave this memo to Sergeant Caluris. (R. 49, Def.'s Resp. to Pl.'s Facts ¶ 28.)

[6] It is undisputed that Caluris made these threats, but it is hotly disputed whether these threats were justified. (*See, e.g.*, R. 30, Def.'s App., Ex. J, Caluris Dep. at 49-51, 61-64; R. 38, Pl.'s Resp. ¶¶ 36-40.)

[7] The City does not deny that Caluris made this statement, but merely claims that Williams admitted that she stopped going to lunch "for the most part." (R. 49, Def.'s Resp. to Pl.'s Facts ¶ 23.) Therefore, for the purposes of this summary judgment motion we find that Caluris made this statement.

[8] The City does not deny that Caluris and Williams spoke about the possibility that a third watch would be created, but denies that Caluris ever threatened to place Williams on the third watch. (R. 49, Def.'s Resp. to Pl.'s Facts ¶ 23.) Therefore, whether Caluris threatened Williams is a disputed fact.

[9] Williams claims that Team 8 was under federal investigation and that Joseph Miedzianowski used to be a member of that team. (R. 39, Pl.'s Facts ¶¶ 30-35.) Miedzianowski was a police officer who was indicted in 1998. (R. 30, Def.'s App., Ex. L, Urbikas Aff. ¶ 5.) The City claims that the team to which Williams was transferred was never under federal investigation and that Miedzianowski was never a member of that team. (R. 49, Def.'s Resp to

3

## B. Area 2

In the summer of 2000, Williams was transferred out of Homan Square to the second watch of Unit 620 in Area 2.[10] (R. 28, Def.'s Facts ¶¶ 59, 62.) As she did at Homan Square, Williams repeatedly saw pornography—consisting of pictures of a vagina, naked women, naked women claiming to be police officers, naked women urinating, and naked sexually-posed pre-pubescent children—on general-use computers at Area 2.[11] (R. 39, Pl.'s Facts ¶¶ 41-45, 71.)

---

Pl.'s Facts ¶ 30.) Williams has not supported her claims with any admissible evidence. The only evidence she provides is her own testimony, which is based on inadmissible hearsay. (*See* R. 39, Pl.'s Facts, Ex. A, Williams Aff. ¶¶ 25, 27-29.) Therefore, Williams has failed to place either of these facts in dispute.

[10] Neither party claims that this transfer was retaliatory. (R. 28, Def.'s Facts ¶ 59.)

[11] The City vigorously asserts that Williams has not placed these facts in dispute because: (1) her testimony is inadmissible; (2) she did not corroborate her testimony with independent evidence; and (3) her affidavit testimony is inconsistent with her deposition testimony. First, Williams does have personal knowledge of what she saw and experienced at Area 2; her testimony is admissible as long as she can establish a foundation for it at trial. We acknowledge that her testimony is rather vague as to dates and participants, but foundation does not require a witness to recount every detail with one hundred percent accuracy. *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637-38 (7th Cir. 2001) (stating that "'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible" and holding that testimony about a conversation was admissible even though it was inexact as to the identity of the participant and the date the conversation occurred). Next, Williams does not need to corroborate her testimony with independent evidence because the record "may include the self-serving affidavit itself, provided that the affidavit 'meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial.'" *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (citing 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2738 (3d ed. 1998)). Finally, Williams' affidavit is not a sham affidavit submitted simply to create a material issue of disputed fact. *See Buckner*, 75 F.3d at 292. New incidents of internet pornography not included in earlier statements are not inherently contradictory. The City will be afforded ample opportunity to impeach Williams about the completeness of her earlier statements at trial. Therefore, we find that the number of times Williams saw internet pornography as well as what she saw are disputed facts.

4

Once, when she activated a computer and found a vagina displayed on the screen, unidentified male officers laughed at her. (*Id.* ¶ 41.)

In June 2001, Williams complained about her exposure to pornography to Sergeant Yul Cousins, one of her supervisors, after she found links to child pornography websites on an Area 2 computer. (R. 28, Def.'s Facts ¶ 67.) Sergeant Cousins told her the next day that he removed the links, and the associated child pornography, from the computer. (*Id.* ¶ 69.) On March 15, 2002, Williams telephoned Sergeant Wilkins, another supervisor, from home and complained again about, among other things, pornography at work. (*Id.* ¶ 73.) Sergeant Wilkins reported her complaint and forwarded it to the Internal Affairs Department, which began investigating this complaint on March 19, 2002.[12] (*Id.* ¶¶ 74, 77.)

Williams claims that she suffered retaliation because of these complaints and the complaints she made at Homan Square. First, Area 2 Commander Walter Green, transferred her to the third watch in January 2001.[13] (R. 40, Pl.'s App., Green Dep. at 66.) Second, Williams' supervising sergeants told her that Commander Green ordered them not to give her any work

---

[12] The City claims that no one else in Area 2 reported internet pornography. (R. 28, Def.'s Facts ¶ 75.) This fact, however, is disputed because Williams provided independent admissible evidence that others have complained about internet pornography. (R. 40, Pl.'s App., Besteda Dep. at 75.)

[13] Williams claims that Commander Green requested this transfer as soon as he discovered that Williams was working at Area 2. (R. 39, Pl.'s Facts ¶ 38.) The only evidence she provided in support of this claim is her own testimony. This evidence is inadmissible because she does not have personal knowledge of when Commander Green requested this transfer. Williams also failed to provide any admissible evidence that January 1, 2001 was the first time she could have been transferred under union rules. (*Id.* ¶ 39.) Accordingly, Williams has not placed in dispute the time that Commander Green requested her transfer or the time that she could have been transferred.

5

from January 1, 2001 through at least June 1, 2001.[14] (R. 39, Pl.'s Facts ¶ 45.) Third, she was assigned seven different partners from January 1, 2001 through March 2002. (*Id.* ¶¶ 56-63). Finally, on April 28, 2002, an independent clinical psychologist found her unfit for duty.[15] (R. 28, Def.'s Facts ¶ 113.)

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[14] Although the City contends that this statement is inadmissible hearsay, we find that this statement is an admission by a party-opponent. *See Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622 (7th Cir. 2003). Williams, however, has provided little, if any, foundation for the conversations she had with the supervising sergeants who told her about Commander Green's order. Because Williams can testify that she received no work during this time period, we exercise our discretion and elect not to strike her testimony about Commander Green's statement.

[15] The City moved to strike many additional acts underlying Williams' retaliation claim on the grounds that Williams failed to support her claims with admissible evidence. We agree that Williams has failed to provide any admissible evidence in support of the following claims: (1) she was told not to leave the building alone, (*id.* ¶ 46); (2) she was told to "go on the streets," (*id.* ¶ 47); (3) it is rare to non-existent for a detective to be SPAR'ed for being temporarily unavailable or SPAR'ed after a verbal warning, (*id.* ¶ 48); (4) her job description and duties were changed on a daily basis, (*id.* ¶¶ 50, 52); (5) she was told she could not work with a detective, (*id.* ¶ 51); (6) she was sent on dangerous assignments by herself, (*id.* ¶ 54); and (7) she was not permitted to choose a partner or request a reassignment, (*id.* ¶¶ 55-56). The City's motion to strike is granted with respect to these allegations. Accordingly, we have not relied on these allegations.

Williams moved to strike the affidavits of Deputy Chief John Risley, Sergeant Eldon Urbikas, and Commander Tina Skahill because: (1) they do not explicitly state that they are based on personal knowledge; (2) were not based on personal knowledge; and (3) were not sworn under oath. (R. 44-1.) Williams' motion is denied because: (1) an affidavit does not have to explicitly state that it is based on personal knowledge, *see AKW Const. & Envtl. Servs., Inc. v. Galioto*, No. 98 C 7104, 2000 WL 1809976, at *2 (N.D. Ill. Dec. 11, 2000); (2) the content of the affidavits indicates that they were based on personal knowledge (this Court could not identify a single statement that does not appear to have been based on personal knowledge in any of the challenged affidavits); and (3) the affiants swore before a notary public that they would testify in Court to all of the facts contained in the affidavits. These affidavits therefore comply with Federal Rule of Civil Procedure 56(e).

6

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether a genuine issue of material fact exists, this Court will evaluate all admissible evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Treadway*, 362 F.3d at 975. Yet the non-moving party must produce evidence sufficient to create a genuine issue of material fact for the "elements of her claim on which she bears the burden of proof at trial." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). In other words, this Court will only grant summary judgment when a trial is unnecessary because no rational trier of fact could rule in favor of the non-moving party. *Buie*, 366 F.3d at 502.

## ANALYSIS

The City has presented three arguments in its motion for summary judgment: (1) all of the Homan Square conduct is barred by the relevant statute of limitations; (2) Williams' hostile work environment claim lacks merit because: (a) none of the conduct was directed at her because of her sex and (b) there is no basis for holding the City liable; and (3) Williams' retaliation claim lacks merit because: (a) Williams did not suffer an adverse employment action and (b) Williams failed to identify a similarly-situated employee who was treated more favorably. For the reasons provided below, we only agree with the City's final argument.

### I. Statute of Limitations

Title VII, specifically 42 U.S.C. § 2000e-5(e), requires a plaintiff to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged harassment. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 352 (7th Cir. 2002). Acts that occurred more than 300 days earlier than the EEOC filing are not actionable unless, under the continuing-

violations doctrine, they are linked to subsequent acts that occurred within 300 days of the EEOC filing. *Id.* The continuing-violations doctrine often applies to hostile work environment claims because they necessarily involve a series of acts that constitute one unlawful employment practice. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-17 (2002). The otherwise time-barred acts, however, must be related to the timely acts. *Id.* at 118. An "intervening action" by an employer, however, can break the relation between time-barred and timely acts.[16] *Id.*

Williams filed her EEOC charge on April 2, 2002, so all the acts that occurred before June 7, 2001 are time-barred if the continuing-violations doctrine is inapplicable. The City claims that everything that occurred at Homan Square is time-barred because Williams' transfer to Area 2 was an intervening action that differentiates the Homan Square acts from the Area 2 acts.[17] The City relies principally on *Costanzo v. United States Postal Service,* No. 00 C 5044, 2003 WL 1701998, at *11 (S.D.N.Y. March 31, 2003), to argue that an internal transfer from one work team to a different work team is a *Morgan* "intervening action." The *Costanzo* court, however, found that the plaintiff's transfer "clearly changed" her working conditions and that the time-barred acts had no relation to the timely acts. *Id.* Like *Costanzo*, Williams' transfer changed her work location, but unlike *Costanzo* it did not significantly change her working conditions; in particular her exposure to workplace pornography remained constant. Additionally, the harassing conduct that was directed at Williams in Homan Square and Area

---

[16] A hostile work environment claim is timely even if the plaintiff knew that she had a claim more than 300 days before she filed her EEOC charge. *Id.* (abrogating *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164 (7th Cir.1996)); *see also Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 18 (1st Cir. 2002); *Boyler v. Cordant Techs., Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003). Therefore, the fact that Williams described her work environment as "hostile and discriminatory" in her November 1999 memo does not render her claim untimely.

[17] Under the continuing-violations doctrine, all of the Area 2 acts are actionable.

8

2—asking inappropriate sexual questions to provoke a response and laughing at Williams' discovery of pornography on a general-use computer—are also related to each other. Accordingly, the time-barred acts are sufficiently related to the timely acts to preclude Williams' transfer to Area 2 from being a *Morgan* "intervening action." Therefore, under the continuing-violations doctrine the Homan Square conduct is actionable.

## II. Sexual Harassment

Under Title VII, specifically 42 U.S.C. § 2000e-2(a)(1), it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." Williams is proceeding under a hostile work environment theory of sexual harassment. A *prima facie* hostile work environment claim consists of the following four elements: (1) unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) conduct that was severe or pervasive enough to create both a subjective and objective hostile work environment; (3) conduct that was directed at the plaintiff because of the plaintiff's sex; and (4) a basis for employer liability. *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). To survive summary judgment, Williams must identify a material disputed fact with respect to each element of her *prima facie* case. *See Robinson v. Sappington*, 351 F.3d 317, 329 (7th Cir. 2003). The City claims that it is entitled to summary judgment with respect to Williams' hostile work environment claim because: (1) no conduct was directed at Williams because of her sex; and (2) there is no basis for holding the City liable.

## A. Discrimination Because of Sex

The City claims that Williams' hostile work environment claim lacks merit because no conduct was directed at Williams because of her sex. Harassment only constitutes discrimination because of sex if it exposes members of one sex to "disadvantageous terms and conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg J., concurring)). Therefore, "inappropriate conduct that is inflicted on both sexes, or inflicted regardless of sex" is outside Title VII's scope because this type of "bad workplace behavior [] cannot be labeled discriminatory." *Holman v. Ind.*, 211 F.3d 399, 404-05 (7th Cir. 2000) (citing *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) (stating that conduct that is "equally offensive to male and female workers" is not harassment because of sex)). For example, in *Holman* the Seventh Circuit held that a supervisor, who solicited sex from a male and a female employee was not discriminating against them because of their sex because his solicitations were not caused by their sex. *Id.*

Williams has not alleged that any of the pornography she viewed was directed at her. She has not alleged that her colleagues were viewing pornography in order to make her feel uncomfortable or for any other reason related to her. The record indicates that her colleagues were viewing pornography at work for their own prurient gratification. While pornography in the workplace likely has a greater negative impact on female employees than on male employees, its mere presence in the workplace affects everyone "regardless of sex."[18] *Id.* Williams' claim,

---

[18] *But see Coniglio v. City of Berwyn, Ill.*, No 99 C 4475, 2000 WL 967989, at *7-8 (N.D. Ill. June 15, 2000) (holding that non-targeted pornography in the workplace is actionable under Title VII without discussing the "because of sex" requirement). We agree with the Third Circuit that "pornography quite possibly could be regarded as 'highly offensive to a woman who seeks to

10

however, is not limited solely to pornography in the workplace. A co-worker showed her a picture of a female arrestee and asked her if she thought the woman "took it up the ass," and other colleagues laughed at her when she found a picture of a vagina on a general-use computer. A jury could infer that her colleagues left this picture on the computer intending or hoping that she would see it. Accordingly, we hold that a rational jury could find that some of the conduct underlying Williams' hostile work environment was directed at her because of her sex. In conjunction with this type of targeted conduct, workplace pornography contributes to her hostile work environment claim because a hostile work environment is determined by the totality of the circumstances. *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000). Therefore, the City is not entitled to summary judgment on this ground.

### B. Basis for Liability

An employer can be liable for a hostile work environment claim if the plaintiff was sexually harassed by a supervisor—an individual who possesses the authority to directly affect the plaintiff's employment terms and conditions—or a co-worker. *Hall*, 276 F.3d at 355-56. If the plaintiff was harassed by a supervisor the employer is vicariously liable for the supervisor's actions, and if the plaintiff was harassed by a co-worker the employer is liable if it was negligent in discovering or remedying the harassment. *Id.* We have already found that Williams' co-

---

deal with her fellow employees and clients with professional dignity and without the barrier of sexual differentiation and abuse.'" *Andrews v. City of Phila.*, 895 F.2d 1469, 1485-86 (3rd Cir. 1990) (quoting *Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir. 1988)). This type of evidence, however, is more appropriate when a plaintiff is proceeding under a disparate impact theory (pornography affects sexes differently) than when a plaintiff is proceeding, like Williams, under a disparate treatment theory of discrimination. *See DeClue v. Cent. Ill. Light Co.*, 223 F.3d 434, 436 (7th Cir. 2000) (explaining the difference between disparate treatment and disparate impact); *see also* Kelly Cahill Timmons, *Sexual Harassment and Disparate Impact: Should Non-Targeted Workplace Sexual Conduct be Actionable under Title VII?*, 81 Neb. L. Rev. 1152 (2003).

workers directed sexual comments at her and laughed at her when she discovered pornography on a general-use computer. We can also infer from the fact that Williams' repeatedly found pornography on general-use computers that her co-workers were at least partly responsible for the presence of these images. Additionally, Williams labels all of her supervisors' actions as retaliation rather than sexual harassment so has presented no evidence that her supervisors contributed to her hostile work environment. Therefore, to survive summary judgment Williams must show that there is a genuine fact issue as to whether the City was negligent in discovering or remedying the harassment.

The City asserts that summary judgment is appropriate because it has a detailed sexual harassment policy and because it promptly responded to both of Williams' Area 2 complaints. These actions, however, do not establish as a matter of law that the City was not negligent in discovering or remedying the harassment. First, it is disputed whether Williams complained to Sergeant Caluris or gave him the November 1999 memo. If the jury concludes that Williams complained or gave him that memo, then the jury could conclude that the City was negligent in remedying the harassment. Second, the prevalence of internet pornography and the City's knowledge of this pornography are also disputed. If the jury determines that pornography was so prevalent that the City should have known about it, the jury could conclude that the City was negligent in discovering the harassment. Similarly, if the jury determines that the City knew about the pornography because others had complained about it, the jury could conclude that the City was negligent in remedying the harassment. Finally, the existence of the sexual harassment policy cannot shield the City from liability, especially when the City does not claim that Williams failed to invoke the policy and when a jury could conclude that Williams' supervisor

failed to respond to Williams' complaints. Accordingly, we find that a rational jury could find the City negligent in discovering or remedying the harassment. Therefore, the City is not entitled to summary judgment on this ground.

In sum, we deny the City's motion for summary judgment on Williams' hostile work environment claim.

## III. Retaliation

Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), prohibits employers from taking an adverse action against an employee because she complained about sexual harassment. *Little v. Ill. Dept. of Revenue.*, 369 F.3d 1007, 1011 (7th Cir. 2004). There are two ways a plaintiff can establish a retaliation claim: the direct and indirect method. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 786-88 (7th Cir. 2004); *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003). Williams is proceeding only under the indirect method.[19]

To survive summary judgment under the indirect method, Williams must establish a *prima facie* case of retaliation. To do so she must identify a genuine issue of material fact with respect to each of the following elements: (1) she engaged in a statutorily-protected activity; (2) she met her employer's legitimate expectations; (3) she suffered a materially adverse

---

[19] We find that Williams is not proceeding under the direct method and, if she is, that she has failed to identify any evidence in support of this method. *See Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003) (identifying the direct method elements); *see also Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Her only mention of "direct evidence" is in the indirect method's similarly-situated-employee element section of her response: "Plaintiff disputes that there is no direct evidence of retaliation." (R. 37, Pl.'s Resp. at 14.) Williams cannot merely dispute the existence of direct evidence; she must identify it. Her failure to do so dooms any direct method argument that she may have made. In our adversarial system, this Court "need not scour the record to make the case of a party who does nothing." *Herman v. City of Chi.*, 870 F.2d 400, 404 (7th Cir. 1989).

employment action;[20] and (4) she was treated less favorably than a similarly-situated employee who did not engage in statutorily-protected activity. *Little*, 369 F.3d at 1011. If Williams establishes her *prima facie* case, the City is nonetheless entitled to summary judgment if it presents unrebutted evidence that the adverse employment action was not retaliatory. *Id.* The City claims that it is entitled to summary judgment on Williams' retaliation claim because Williams has not created a genuine issue of material fact with respect to whether she suffered an adverse employment action or whether she was treated less favorably than a similarly-situated employee.

**A. Adverse Employment Action**

The City asserts that Williams failed to identify an adverse employment action. An adverse employment action is an act taken by the employer that: (1) diminishes the financial terms of an employee's employment; (2) diminishes an employee's career prospects, such as a job change or a nominally-lateral transfer; or (3) alters an employee's working conditions in a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative" manner that could objectively be characterized as a "hardship." *Herrnreiter*, 315 F.3d at 744. We have already determined that Williams' retaliation claim is based on the following acts: (1) disciplinary threats; (2) the denial of a lunch break; (3) shift-change threats; (4) an unfavorable review; (5) a transfer to a different unit; (6) a transfer to a different shift; (7) the denial of work

---

[20] Title VII's anti-retaliation provision is not limited to adverse employment actions. *See McDonnell v. Cisneros*, 84 F.3d 256, 258 (7th Cir. 1996) (stating that "it is obvious that effective retaliation against employment discrimination need not take the form of a job action). We use the term "adverse employment action" throughout this opinion because Williams has only alleged employment-related adverse actions, and an employment-related adverse action must be an "adverse employment action." *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021,1032 n.4 (7th Cir. 2004); *see Herrnreiter v. Chi. Housing Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (identifying three types of "adverse employment actions").

14

assignments; (8) frequent partner reassignment; and (9) being found unfit for duty. While many of these acts are not adverse employment acts, the denial of work assignments is a job change that diminished Williams' career prospects. *See Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994) (stating that stripping an employee of all duties "would be adverse for all but those completely devoid of ambition or the need to be challenged"). Therefore, Williams has identified a genuine issue of material fact, and the City is not entitled to summary judgment on this basis.

### B. Similarly-Situated Employee

The City also claims that Williams has failed to identify a genuine issue of material fact with respect to whether she was treated less favorably than a similarly-situated employee. A similarly-situated employee is an employee who is comparable to Williams in all material respects: performance, qualifications, and conduct. *Durkin v. City of Chi.*, 341 F.3d 606, 614 (7th Cir. 2003). We do not have to address the question of whether an employee is similarly situated because Williams fails to identify one; she compares herself to "others" without identifying them or explaining how they are similar to her. (R. 37, Pl.'s Resp. at 15.) "[U]ncorroborated generalities are insufficient to support a Title VII claim." *Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 615 (7th Cir. 2001). Therefore, the City is entitled to summary judgment on this ground.

### CONCLUSION

We have decided three motions in this opinion: Williams' motion to strike, (R. 44-1), the City's motion to strike, (R. 50-1), and the City's motion for summary judgment, (R. 27-1). We deny Williams' motion to strike, (R. 44-1), partially grant and partially deny the City's motion to

strike, (R. 50-1), and partially grant and partially deny the City's motion for summary judgment, (R. 27-1.) Williams' hostile work environment claim survives summary judgment, but her retaliation claim does not because she failed to establish a genuine issue of material fact with respect to the similarly-situated element of her *prima facie* case. While we sympathize with Williams' efforts to obtain some relief for the retaliation she believes she suffered, our sympathy does not permit us to make her case for her by scouring the record for admissible evidence. Nor, at this stage of the proceedings, can we allow her to rely solely on uncorroborated generalities. A status hearing to set a firm trial date will be held on July 29, 2004 at 9:45 a.m. The parties are again requested to fully exhaust all remaining settlement possibilities.

ENTERED: _____
Judge Ruben Castillo
United States District Court

Dated: July 13, 2004